**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:07CR47-TFM** |
| | ) | |
| **ALICE JACKSON** | ) | |
| **Defendant.** | ) | **July 16, 2007** |

**RENEWED MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

Comes now the Defendant (hereinafter Ms. Jackson) by and through her undersigned counsel, and presents as her Renewed Motion for Judgment of Acquittal or in the Alternative, a Motion for New Trial, the following:

1. The case of the *United States of America v. Alice Jackson* was heard in this Court on July 9, 2007.

2. At the close of the prosecution's case, Ms. Jackson moved for a judgment of acquittal, and this Court granted a partial judgment of acquittal on one of the items that was alleged to have been stolen from the Base Exchange by Ms. Jackson, namely a Lancome mascara pen.  The Court said that there was no evidence shown by the prosecution that indicated Ms. Jackson had taken the item or that she even knew that it was in her shopping cart when she left the Maxwell Base Exchange.

3. At the close of the evidence in the case, Ms. Jackson again moved for a judgment of acquittal, and said motion was denied by the Court.

4. Then, during the prosecution's closing argument, the Court asked the prosecuting attorney why he should believe Ms. Jackson intended to shoplift instead of believing that her action was just a memory failure on her part given her advanced age (64 years of age).  The Court also

questioned what the prosecution considered its strongest evidence that Ms. Jackson had attempted to steal four (4) pairs of earrings from the Base Exchange at Maxwell Air Force Base.

5.     The only witness the prosecution called, the Base security guard, testified that while Ms. Jackson was shopping around the Base Exchange, he was aware that Ms. Jackson had placed four pairs of earrings in her shopping cart, but was not certain as to whether she intended to steal said earrings. Even though the security guard, who again was the lone witness for the prosecution, testified that he watched Ms. Jackson constantly during her one hour and twenty minute shopping trip, he repeatedly testified he was not certain as to her intentions while she was shopping, and that she could have very well forgotten she placed the earrings in the shopping court.

6.     At a point approximately twenty minutes after she placed the earrings in the shopping cart, Ms. Jackson reached into the cart and moved some ads, such that they covered the earrings. The security guard testified he could not be certain that she intended to cover up the earrings.

7.     In fact, it was clear from the video tape that Ms. Jackson was looking intently at shoes for some time before reaching into the shopping cart, and then she continued to look at the shoes immediately after looking into the shopping cart. Ms. Jackson testified that she had been told about a shoe sale and that she was merely looking to see if there was an ad about the shoe sale when she reached into the shopping cart. Clearly, Ms. Jackson was looking into the shopping cart for some advertisement concerning the sale of the shoes and mistakenly covered the earrings in the process. During the one hour following Ms. Jackson's reaching into the shopping cart, she shopped around the Base Exchange for numerous items of ladies and baby clothing. She also went into the women's accessories area  as well as the bedding area of the store before she finally went to the cash register to pay for the items in the shopping cart.

2

8.    When Ms. Jackson went through the cash register, she paid for all of the items that were visible in her cart with her American Express card.  The total amount of the purchases was $79.99.  Ms. Jackson then left the Base Exchange and headed towards her vehicle.

9.    When Ms. Jackson arrived at her vehicle, she opened the trunk, immediately reached into the shopping cart, took one of the larger bags and placed it in the trunk.  She then turned from her trunk to the shopping cart,  reached down, lifted the ads and removed the earrings.  Ms. Jackson testified that when she looked back into the cart, she could see the corner of one of the cards to which the earrings were mounted, which caused her to remember that she had the earrings in the cart and had not paid for them.  Ms. Jackson's testimony cannot be disputed by the prosecution, because she was the only person in a position to see what was in the bottom of her shopping cart.  The security officer initially testified he could see in Ms. Jackson's shopping cart, but eventually admitted he could not.  Ms. Jackson testified she immediately picked up the earrings, placed them into a small bag with merchandise that had been paid for and intended to take them back into the Base Exchange to pay for them, but she was stopped by the security officer.

10.    According to the prosecution's only witness, Ms. Jackson attempted to turn and place the bag containing the earrings into her trunk.  The videotape is clear that Ms. Jackson never turned in an attempt to place the bag with the earrings in her trunk.

11.    This court will note that the prosecution's witness did **not** testify under direct examination that Ms. Jackson told him that she intended to bring the earrings back into the store. However, on cross examination, the security officer admitted that Ms. Jackson told him she was going to take the earrings back into the store to pay for them.

12.    Ms. Jackson testified that she would not have taken the earrings without paying for

3

them.  She has never stolen anything in her life, and felt that if anything was worth having, it was worth paying for.  Ms. Jackson also testified that she had been a school teacher for 35 years, and always stressed to her students, as well as her children, the value of honesty.  Ms. Jackson certainly did not intend to take the earrings from the Base Exchange.

13.     The five witnesses presented by Ms. Jackson during her case were instrumental in showing her character.  It was readily apparent from Ms. Jackson's witnesses that she has an outstanding character for honesty and truthfulness, and that none of the five witnesses presented believed that she would commit such a crime as shoplifting or theft.  One witness, namely Sheila Brock, testified that Ms. Jackson had served as a role model for her.  Ms. Brock eventually became a teacher because of her association with Ms. Jackson.

14.     Reverend E. Baxter Morris, minister of the First Baptist Church on Ripley Street, testified to Ms. Jackson's strong character for honesty and truthfulness, and her volunteer ethic.  She is always willing to help others.  Reverend Morris further testified that he also had left a store without paying for something, but had returned to pay for the same.  He testified that he believed that Ms. Jackson, too, would have returned to pay for the items.

15.     Ms. Jackson's most impressive witness was Technical Sergeant Tomika Hawkins. Sergeant Hawkins is a single parent and Ms. Jackson cares for her children while Sergeant Hawkins is away on assignment.  Hawkins testified that Ms. Jackson accepts no compensation for caring for Hawkins' children, even though it is offered.  Further, Sergeant Hawkins testified that anything Ms. Jackson purchases at the Base Exchange, is reimbursed by Hawkins.  Therefore, Ms. Jackson had no motive to be shoplifting anything from the Base Exchange, as she would have been reimbursed for anything she had purchased.

4

16.     The prosecution was required to prove, beyond a reasonable doubt, that Ms. Jackson knowingly took merchandise or property from the United States, via the Base Exchange, with the intent to deprive the government of that property.

17.     Ms. Jackson does not dispute that she took four pairs of earrings off the shelf and then eventually left the Base Exchange building without paying for them.  However, Ms. Jackson claims that she merely forgot the items were in the bottom of her shopping cart.  She strongly disputes that she had any intention of shoplifting the earrings.  We also dispute that the government proved, beyond a reasonable doubt, that she had any intention of stealing the four pairs of earrings.

18.     The mere fact that Ms. Jackson had the earrings in her shopping cart outside of the Base Exchange, and then picked them up out of the cart does not show her intent to steal those items. The fact that Defendant put them in the bag does not prove that she had any intent to steal the items; quite the contrary, Ms. Jackson testified that she intended to return to the store and pay for the items.

19.     The prosecution's witness testified it was the fact that Ms. Jackson placed the earrings in a bag with merchandise she had paid for and then turned to place the bag in the trunk, was the reason the witness believed she intended to steal the earrings.  The videotape shows clearly that, even though she put the earrings in the bag, she did not turn to put the bag in the trunk.  Therefore, the most important reason for the prosecution's witness' belief, did not even happen as he testified.

20.     If the Base Exchange security officer had waited 5 more seconds, Ms. Jackson's intent would have been clear.  Ms. Jackson would have certainly returned to the Base Exchange and paid for the items.  The great weight of evidence presented by five witnesses as to Ms. Jackson's truthfulness and honesty created reasonable doubt in the mind of the trier of fact whether she intended to steal the earrings.  Such reasonable doubt was readily apparent during the prosecution's

5

closing argument when the Court asked the prosecutor why he would believe Ms. Jackson was trying

to steal, as opposed to have just forgetting the items in the shopping cart due to her advanced age (64

years of age).  This Court showed that it had reasonable doubt as to Ms. Jackson's intent to shoplift

the earrings.

21.    If there was reasonable doubt in the mind of the Court, then the prosecution did not

prove its case, and therefore, the Court should have given a judgment of not guilty to Ms. Jackson.

The foregoing considered, Ms. Jackson moves this Court to issue a judgment of acquittal of

the charge of theft in the 3rd degree, or in the alternative, she asks this Court to order that a new trial

be held in this matter so that she can present evidence to exonerate her from the charges against her.

Respectfully submitted this 16th day of July, 2007.


                                                    /s/Joseph C. Guillot
                                                Joseph C. Guillot (GUI011)
                                                Attorney for Defendant

OF COUNSEL:
**McPHILLIPS SHINBAUM, L.L.P.**
P. O. Box 64
Montgomery, AL  36101
Telephone - 334) 262-1911
Facsimile - 334) 263-2321

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 16th day of July, 2007, I have served a copy of the foregoing
document upon the following counsel for the United States via the Court's electronic filing system.

Satura McPherson, Esq.
Amber Brugnoli, Esq.
Special Assistant United States Attorneys


                                                    /s/Joseph C. Guillot
                                                Of Counsel

6